# Staunton

## W. J. Childers v. Commonwealth of Virginia.

September 9, 1938.

Present, All the Justices.

The opinion states the case.

*G. B. Johnson* and *Clayton Scyphers*, for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Joseph L. Kelly, Jr., Assistant Attorney-General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

This prosecution rests upon a warrant which reads:
"Warrant of Arrest

"State of Virginia,

"County of Washington, to-wit:

"To the sheriff or any police or constable of the said county:

"Whereas, G. W. Maines, G. Warden of the said county has this day made complaint and information on oath before me, E. H. Moore, Trial Justice of the said county, that W. J. & C. L. Childers in the said county, did on the .... day of ............, 1937: Unlawfully keep in his possession a sheep-killing dog.

"These are, therefore, to command you in the name of the Commonwealth to ( ) apprehend ( ) summon and bring before me, the body of the said W. J. & C. L. Childers to answer the said complaint and to be further dealt with according to law. And you are also directed to summon Joe Bott, Latent Bott as witnesses.

"Given under my hand and seal, this 23 day of June, 1937.

> "J. T. HAGY, (Seal)
> "J. P., T. J."

It was heard, and on it the justice rendered this judgment:

"Dismissed at cost of W. J. Childers & order dog of W. J. Childers to be killed by game warden."

From it Childers appealed to the Circuit Court of Washington county. At his trial there he pleaded not guilty and for additional plea said:

"Now comes the defendant W. J. Childers, and says for a plea that he did not own a shepherd dog or have any dominion or control over a shepherd dog on the 6th day of June, 1937, and prays that he be dismissed without cost to him in this cause."

The trial court declined to dismiss him, and the case proceeded. When the evidence was all in, the motion to dismiss Mr. Childers was again made and overruled. In doing this

the court did, however, say: "He came into court of his own accord. The verdict of the trial justice was that the dog be killed, and he appealed. There will be no verdict against him."

Instruction No. 8, which was then given, reads:

"The court instructs the jury that the burden is on the Commonwealth to prove beyond a reasonable doubt that the dog in question was a sheep-killing dog before you can find the defendant guilty, and unless the Commonwealth has so proven you will find the defendant not guilty."

Under it the jury might have found the defendant guilty. This is the verdict it returned:

"We the jury find that the dog in question was a sheep-killing dog."

"Signed   D. C. WILSON,
"Foreman."

It was accepted by the court, which thereupon entered this judgment:

"It is therefore considered and adjudged by the court that the said dog is a live stock killer and it is further adjudged and ordered that the said dog shall be killed immediately, which G. W. Maines, Game Warden, the officer designated by the court to act shall do.

"And it is further ordered that W. J. Childers do pay the costs of this proceeding, judgment for which is herewith awarded and upon which execution may issue."

Since there was no finding as to Childers on this accepted verdict, it amounts to one of not guilty as to him; and yet judgment went against him for costs, in amount a little under $200.

The Commonwealth contends:

"The justice of the peace who issued the warrant caused it to recite that the persons summoned 'unlawfully' kept a sheep-killing dog—apparently assuming that a warrant must charge some offense. However, our statutes nowhere attempt to create such an offense, and the record affirmatively shows that the plaintiff in error was never on trial,

both the trial justice and the circuit court having treated the proceedings as *in rem* against the dog."

If this be sustained, its effect is this: We have in a civil proceeding a judgment against a defendant for less than $300, from which it would follow that we are without jurisdiction to entertain an appeal. This appears to have been the conclusion reached by the trial court, which said: "The statute does not inflict any penalty on Mr. Childers."

The facts which developed upon trial are thus summed up by the Commonwealth in its brief:

"At the trial in the circuit court, it developed (through undisputed evidence) that the dog did not even belong to the plaintiff in error, but merely stayed at his home."

We may concede that Childers was in fact guilty of no crime, and we may readily concede that the owner of a dog charged with sheep-killing may appear in court to refute that charge, and in such manner become liable for costs. But Childers did not come voluntarily into court; he was either actually arrested or came to avoid arrest and found himself charged with what purported to be an offense— with "unlawfully keeping in his possession a sheep-killing dog."

He was tried and judgment for costs went against him. This judgment he had to pay or go to jail and so was well within his rights in protesting. On appeal he asked that he be dismissed. That motion was denied, and he went to trial with the results stated.

It is true that the proceedings in the circuit court were had *de novo*, but he was tried upon the "warrant of arrest" issued by the justice, which, as we have seen, charged him with an offense, of which he might, under the court's instruction, have been found guilty by the jury.

Childers did nothing which might not have been expected of any other defendant charged with a crime. He protested and asked that he be dismissed; his plea was overruled, and he was put upon his trial. He had already been apprehended, tried and convicted by the trial justice. We are now asked by the Commonwealth to say that all that has

been done was a mistake and that he should not have been tried for a criminal offense at all. Plainly this claim is untenable. At the most, we have an ill-advised prosecution, which, so far as the defendant is concerned, is as real as if he had been charged with murder. The story of the man who was told he could not be sent to jail for that is an old story.

The Commonwealth has elected to treat what he did as a crime, whether it be a crime or not, and the defendant is entitled to all of those rights which any defendant arrested, brought into court and tried has. He should not be made to pay the costs of a prosecution, which, so far as he is concerned, should never have been instituted. How could he tell in advance that he would not be convicted?

Reversed and final judgment for the defendant.

*Reversed.*